Filed 5/13/15  Kahn v. Ameresco, Inc. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| TAHSEENA KAHN, | B243169 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. PC050348) |
| v. | |
| AMERESCO, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Randy Rhodes, Judge.  Affirmed.

Tahseena Kahn, in pro. per., Plaintiff and Appellant.

Maranga • Morgenstern, Robert A. Morgenstern, Ninos Saroukhanioff and Dennis S. Newitt for Defendants and Respondents Ameresco, Inc., P&J Electrical, Inc. and Baymarr Constructors, Inc.

Brumfield & Hagan and Robert H. Brumfield, III, for Defendants and Respondents Old Republic Surety and Western Surety.

_____

Plaintiff Tahseena Kahn appeals dismissal of her action for breach of contract, personal injury, and unpaid wages against defendants P&J Electrical, Inc., Baymarr Constructors, Inc., Ameresco, Inc., Old Republic Surety, and Western Surety. Plaintiff was briefly employed as a project manager at an energy construction project run by P&J Electrical and Baymarr. During that time period, plaintiff asserted she became ill due to exposure to toxic materials and was unable to work, and after P&J Electrical and Baymarr terminated her, they refused to pay her wages. After defendants demurred to her second amended complaint (SAC), plaintiff, who appeared in pro per., failed to respond, and the trial court sustained defendants' demurrers without leave to amend. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

*1. Plaintiff's SAC*[1]

Plaintiff commenced work as the project manager for P&J Electric in Tehachapi in October 2009. For tax reasons, plaintiff held the position as an independent contractor. Plaintiff and P&J Electric agreed that plaintiff would convert to a full-time employee in 2010.

Plaintiff was also a part-time student, and was taking four graduate level courses. She therefore informed P&J Electric that she could only work four days a week because she needed to attend a class on Wednesday afternoons. P&J Electric agreed to plaintiff's terms, and plaintiff was to be paid $1,600 per week. The parties did not discuss afterhours or weekend work, so plaintiff assumed that she would only work eight hours a day, and at $1,600 per week, calculated her hourly rate at $50 per hour. P&J Electric did not disclose the nature of the work environment, nor did it discuss the possibility of long hours or weekend hours with plaintiff.

---

[1] In accordance with the standard of review, although plaintiff's opening brief contains a lengthy factual recitation and she attached numerous exhibits to her brief, we only set forth those facts stated in the complaint and subject to judicial notice. (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 42–44 [demurrer tests sufficiency of complaint].)

2

Two days after plaintiff started work for P&J Electric, she was informed that she was to work six days a week at the Chiquita Canyon Landfill in Castaic. A month later, plaintiff's schedule was changed to two shifts, and plaintiff was required to work seven days a week. As a result, plaintiff was unable to study for her classes. When plaintiff complained about her hours and schedule, she was told she was on salary and could not expect extra pay. Plaintiff asserted that independent contractors cannot be paid on a salary basis because their hours are set by contract.

On January 5 and January 9, 2010, plaintiff was promised overtime pay but was not paid for overtime work. P&J Electric claimed that Baymarr Constructors had not approved the overtime request. After plaintiff contacted Baymarr Constructors directly, they declined her overtime request.[2]

On November 9, 2009, plaintiff became nauseated while watching two workers dig a ditch for an electrical line. Plaintiff left work and could not return to work that day. The next day, she learned that the other two workers had also become nauseated, and one had been hospitalized for vomiting. Plaintiff suspected the workers had been exposed to underground toxic fumes. Baymarr Constructors notified Ameresco, the owner of the project, but Ameresco did not call Cal-OSHA, nor did it bring in a toxicologist.[3]

Several days later, the toxicologist arrived at the site, but there were no landfill activities occurring. There was no foul odor from landfill gases and the affected site did not hold any more toxic fumes. "Hence, the toxicologist declared the site as safe."

P&J Electric terminated plaintiff's services on January 28, 2010. Plaintiff asserted she was owed $3,200 for her last two weeks with P&J Electric. Plaintiff also did not receive the penalty payable where wages are not received within 30 days of termination. Therefore, plaintiff sent defendants a new invoice for her services in February 2010. P&J

---

[2] Although not alleged in her SAC, apparently Baymarr Constructors was the general contractor on the project, and P&J Electrical was a subcontractor.

[3] According to plaintiff's opening brief, she suspected methane exposure and a test performed at the site showed an unsafe 20 percent methane level.

3

Electric sent two checks, one for $980 and the second for $444.92. Out of the second check, P&J Electric deducted $799 for a computer plaintiff alleged was worth $499. P&J also deducted a virus protection fee, a broadband fee, and a computer technician's fee. Plaintiff alleged that the computer did not have a virus scanner, that she did not have it because it was at the technician for virus scanning at the time of her termination, and plaintiff was ill at the time and could not return it to P&J Electric. In March 2010, plaintiff attempted to return the computer and texted a request for a pick up to an employee of P&J Electric, but the employee told her that P&J Electric had not instructed him to pick up the computer.

In April 2010, plaintiff contacted Ameresco to resolve her wage issue. Plaintiff received a letter from P&J Electric asserting that it did not owe plaintiff anything. Plaintiff contacted Old Republic Surety, defendants' bonding company, but her claim with the bonding company was rejected.

In June 2010, plaintiff's car was repossessed. Plaintiff owed $1,248 on the car, and asserted she would not have lost the car if defendants had paid her.

After the incident at the digging project, plaintiff experienced chronic nausea and bloating. Plaintiff began diabetes treatment, but would still become nauseated by strong odors and stopped eating cooked food. After her insurance expired in August 2010, she could not afford prescription medication. In September 2010, plaintiff obtained free treatment from Los Angeles County. Plaintiff later learned she does not have diabetes, but still experiences nausea. Plaintiff asserted that had defendants implemented proper safety measures pursuant to CAL-OSHA, the incident could have been avoided.

In February 2011 plaintiff received a right-to-sue letter from the Department of Fair Employment and Housing, and was advised by the Labor Commissioner to file a lawsuit against all parties including the bonding company.

In November 2011, plaintiff filed for bankruptcy under chapter 7. Plaintiff was unable to pay her bills and unable to work due to illness. Plaintiff asserted she had lost two years of productivity and wages.

4

Plaintiff's SAC,[4] filed in pro. per. on December 7, 2011, stated claims for breach of contract based upon P&J Electric's failure to inform her of her true schedule; personal injury based upon her chronic nausea and other symptoms; and unpaid overtime wages and other damages. Attached to plaintiffs' SAC were copies of letters she wrote to attorneys in an attempt to secure counsel to represent her in her action.

2.      *Demurrers; Plaintiff's Requests for Continuance; Trial Court Ruling*

On January 4, 2012, defendants Ameresco, P&J Electric, and Baymarr Constructors demurred to plaintiff's SAC. Defendants asserted that plaintiffs' first cause of action for breach of contract failed because it did not set forth the essential terms of the contract; failed to state whether the contract was oral, written, or implied; failed to allege defendants' breach; failed to allege a contractual relationship with Baymarr Constructors and Old Republic Surety; and failed to state whether plaintiff had performed the contract. Defendants asserted that the second cause of action for personal injury failed to allege that defendants owed her a legal duty because its allegations of duty were based on the conduct of the two workers with whom plaintiff was working digging the ditch for an electrical line, and plaintiff failed to allege a causal connection between any alleged injury and her physical symptoms. Finally, defendants asserted the third cause of action failed because plaintiff did not allege the terms of the purported agreement to pay overtime, or that she had fully performed under any such agreement.

On January 20, 2012, defendant Old Republic Surety also demurred, contending that the SAC failed to allege facts constituting a cause of action and was uncertain.

On May 11, 2012, plaintiff filed an ex parte application for extension of time to respond to defendants' demurrers. Plaintiff asserted that she had been ill and was unable to prepare her opposition. The trial court granted her motion. On July 9, 2012, the day

---

[4] Plaintiff's original complaint was filed March 9, 2011. On March 18, 2011, plaintiff filed a FAC. On September 9, 2011, the trial court sustained defendants' demurrer to plaintiffs' FAC on the ground that the FAC failed to allege facts sufficient to state a cause of action.

5

before the scheduled hearing, plaintiff sought a second extension of time. The trial court did not rule on the matter.

Plaintiff failed to file a response to the demurrers. At the hearing held July 10, 2012, plaintiff asserted that she had received a nine-month extension to file her SAC, but was ill in January 2012 when defendants filed their demurrer. She was only able to contact her attorney in mid-June, and told her attorney that she would handle the motion on her own. The court noted that plaintiff had been given three separate extensions to file her amended complaint on October 13, 2011, November 15, 2011, and December 7, 2011. The court reminded plaintiff that it had advised her in May 2012 that there would be no further extensions. The court continued, "I've given you a number of continuances, and I am troubled by the fact that, not only did I give you an extension—basically since December [2011] because May [2012] included that—an extension since December just to get something to me. Your complaint has value. That's correct. It can state a cause of action for something . . . . I've given you over a year to do the same, and today it's the same thing. [You] are asking for a continuance again." The trial court sustained the defendants' demurrers to the SAC without leave to amend.

### DISCUSSION

Plaintiff makes three arguments on appeal that do not focus on the merits of her case, but relate procedurally to her failure to oppose the demurrer to her SAC: (1) if the trial court had not been dark when plaintiff made her second ex parte application for an extension of time to respond to defendants' demurrers, the trial court would have known why she missed the deadline to file her opposition and would have ruled in her favor; (2) the trial court erroneously found plaintiff had been given nine months of extensions, when in fact she had only been given 35 days; and (3) the trial court failed to inform plaintiff of the Sargent Shriver Civil Counsel Act (AB 590) (Gov. Code, §§ 68650, 68651) (Shriver Act), which will provide legal representation to a selected number of low-income residents.

6

A motion for continuance is addressed to the sound discretion of the trial court. (*Link v. Cater* (1998) 60 Cal.App.4th 1315, 1321.) "'Judges are faced with opposing responsibilities when continuances . . . are sought. On the one hand, they are mandated by the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.) to actively assume and maintain control over the pace of litigation. On the other hand, they must abide by the guiding principle of deciding cases on their merits rather than on procedural deficiencies. [Citation.] Such decisions must be made in an atmosphere of substantial justice. When the two policies collide head-on, the strong public policy favoring disposition on the merits outweighs the competing policy favoring judicial efficiency.'" (*Oliveros v. County of Los Angeles* (2004) 120 Cal.App.4th 1389, 1395.)

"[T]he court must look beyond the limited facts which cause a litigant to request a last-minute continuance and consider the degree of diligence in his or her efforts to bring the case to trial, including participating in earlier court hearings, conducting discovery, and preparing for trial." (*Oliveros v. County of Los Angeles*, *supra*, 120 Cal.App.4th at p. 1396.) "'What is required is balance. "While it is true that a trial judge must have control of the courtroom and its calendar and must have discretion to deny a request for a continuance when there is no good cause for granting one, it is equally true that, absent [a lack of diligence or other abusive] circumstances which are not present in this case, a request for a continuance supported by a showing of good cause usually ought to be granted." [Citation.]'" (*Ibid*.) Plaintiff is held to the same standard as an attorney even though she is representing herself. (*Kobayashi v. Superior Court* (2009) 175 Cal.App.4th 536, 543.)

Here, we find no abuse of discretion. Contrary to plaintiff's assertion, the case docket demonstrates that she was given numerous continuances to file her amended complaints and responses to demurrers. After the demurrer to her complaint was sustained without leave to amend on September 9, 2011, on November 15, 2011, the court granted plaintiff an extension of time to file her first amended complaint (FAC). On November 3, 2011, the trial court granted plaintiff's motion an extension of time to file

7

her SAC.  Plaintiff's SAC was filed on December 7, 2011, and defendants' demurrer to her SAC was filed January 20, 2012.  Nearly four months later, on May 11, 2012, plaintiff received her first extension of time to respond to the demurrer, and applied again for an extension on July 9, 2012, the eve of the July 10, 2012 hearing.  As the trial court correctly observed—and plaintiff admitted at the  hearing—plaintiff had over nine months of extensions (from Nov. 2011 to July 2012), but failed to mount a defense to her SAC.  Further, plaintiff cannot demonstrate prejudice from the fact the court did not rule on her motion on July 9, 2012, the date before the hearing.  The court's statements at the hearing indicate the court felt that sufficient continuances had been granted in spite of plaintiff's latest request.

Further, plaintiff did not qualify for appointed counsel under the Shriver Act, enacted in 2009 as Government Code sections 68650 and 6851 and operative July 1, 2011.  Those sections require legal counsel to be appointed to "represent low-income parties in civil matters involving critical issues affecting basic human needs in those specified courts selected by the Judicial Council."  (Gov. Code, § 68651, subd. (a).)  Under the Shriver Act, the Judicial Council developed model pilot projects in selected courts (including Los Angeles County).  Based on the significant percentage of parties not represented in family law matters, proposals to provide representation in child custody cases are deemed a high priority, especially where one party is already represented.  (Gov. Code, § 68651, subd. (b)(2)(A).)  Under the program, counsel will be appointed for eligible low-income persons who require legal services in the following matters: (1) housing-related matters; (2) domestic violence and civil harassment restraining orders; (3) probate conservatorships; (4) guardianships; (5) elder abuse; and (6) actions by a parent to obtain sole legal or physical custody of a child.  (Gov. Code, § 68651, subd. (b)(1).)  Eligibility for appointed legal representation is limited to clients whose household income falls at or below 200 percent of the federal poverty level.  (Gov. Code, § 68651, subd. (b)(1).)

Here, plaintiff has not demonstrated she qualified for representation because her case, involving employment issues, does not fall within the statute's areas of representation. Thus, even if the trial court informed her of the benefits of the Shriver Act, plaintiff would have been unable to avail herself of such benefits.

## DISPOSITION

The judgment is affirmed. The parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


ROTHSCHILD, P. J.


CHANEY, J.